**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JULIAN LEE GREEN,**

   **Plaintiff,**

**vs.**             **Civil Action No. 1:17cv37
                  (Judge Keeley)**

**AMANDA MCGRUE,** Central Office
P.R.E.A. Coordinator**; MARY KNOTTS,** A.W.P.
Of Martinsburg Correctional Center, PREA
Compliance Manager**; LUCAS ROPER,**
Investigator**; ADAM MILLER,** Officer at M.C.C.**;
STATE OF WEST VIRGINIA; HEARING
OFFICER DODSON; LT. SHOEMAKER;
SCOTT PAUGH,** Superintendent
Martinsburg Correctional Center**; JIM
RUBENSTEIN,** Commissioner, W.V.D.O.C**,**

   **Defendants.**

### REPORT AND RECOMMENDATION

### I.  Procedural History

On March 6, 2017, the Plaintiff filed this action under 42 U.S.C. § 1983.  On April 7, 2017, the Plaintiff was granted leave to proceed *in forma pauperis*.  On September 18, 2017, the Plaintiff filed an Amended Complaint against the above-named Defendants. On August 29, 2018, former United States Magistrate Judge James E. Seibert conduct a preliminary review of the Amended Complaint and determined that summary dismissal was not warranted. Accordingly, an Order to Answer was entered and summonses were issued. Currently pending are three Motions to Dismiss or, in the alternative, for Summary Judgment. The first was filed on September 28, 2018, on behalf of Defendants Mary Knotts, Roger Dodson, Lucas Roper and Adam Miller.  ECF No. 54. The second was filed on October 24, 2018 on behalf of  Defendant Amanda

McGrew. ECF No. 68. The third was filed on November 5, 2018, on behalf of Defendant

Scott Paugh. ECF No. 74.  On November 26, 2018, the Plaintiff file a Response. ECF

No. 76.  The Defendants filed a Reply on December 10, 2018. ECF No. 78.

## II. Factual Background[1]

On July 4, 2016, the Plaintiff was issued a Disciplinary Incident Report charging

him with two offenses: (1) Obstructing and (2) Falsification of Information/Testimony.

The Obstructing charge resulted from the Plaintiff repeatedly requesting grievances

throughout the day. In total, he filed four grievances on that day. The incident report

indicated that "[b]y repeatedly requesting grievances Inmate[ ] Green [has] prohibited

[his] rover from competing [his] daily tasks in a timely fashion as well as Supervision

staff who had to continually stop their duties to provide grievances to correctional line

staff." ECF No. 24-2 at 2. With respect to the charge of Falsification of

Information/Testimony, one of the grievances filed by the Plaintiff on July 4, 2016,

alleged that Sgt. King threatened him. However, Officer Morris, who was present at the

exchange between King and the Plaintiff reported to Lt. Shoemaker, the Shift

Commander, that she heard Sgt. King state only: "Is there anything else I can do for

you?" and handed him the grievance form he had requested. Id. A hearing was

---

[1] According to WVDOC Offender Details, the Plaintiff has three convictions, all in the Circuit Court of Ohio County. The Plaintiff first entered the custody of the WVDOC on January 29, 2009, following his conviction for Fleeing from an Officer and Forgery. The incidents giving rise to this complaint occurred at the Martinsburg Correctional Center. However, at the time he filed his complaint , the Plaintiff was housed at the Salem Correctional Center in Industrial, West Virginia. By letter dated May 30, 2017, the Plaintiff informed the Court that he had been moved to the Northern Correctional Facility in Moundsville, West Virginia. By letter dated September 25, 2017, the Plaintiff informed the Court that he had been moved to the Huttonsville Correctional Center. By letter dated January 14, 2019, the Plaintiff notified the Court that his current address was 1114 Harper Road-Pagoda Motel in Beckley, West Virginia. Finally, by letter dated April 15, 2019, the Plaintiff informed the Court that he was living in Wheeling, West Virginia. Based on the WVDOC Offender Details, it appears that the Plaintiff has been paroled.

conducted, and testimony was given by Morris, Shoemaker and the Plaintiff, and  the

Plaintiff was found guilty. As a result, he was sanctioned with "Loss of all Privileges

Suspended to Probation-180 days." Id. at 3.

On July 8, 2016, at approximately 9:22 a.m., the West Virginia

Intelligence/Fusion Center received a PREA[2] allegation from an unknown inmate at the

Martinsburg Correctional Center. A summary of the allegations received included, but

were not limited to:

> unknown inmate" stated "Yes, this is (Unintelligible name) uh, today Friday July
> 8th, I believe so, but I was coming back from medical, and uh, Officer Miller like
> patted me down, uh grabbed my private area. Uh I have uh, you said other
> grievances on this officer before for making sexual inappropriate comments, and
> now he has uh, sexually, uh, uh, uh, assaulted me by uh, grabbing my private
> area. I would like to press charges…

ECF No. 69-1 at 13.

On July 8, 2016, at approximately 12:10 p.m., Lucas Roper, Investigator II,

("Roper") was advised via email that the PREA complaint had been made, and he in

turn, informed Associate Warden of Programs Mary Knotts ("Knotts") of the alleged

violation at 2:00 p.m.

Roper began his investigation on Monday, July 11, 2016. During  his

investigation, Roper monitored four phone calls made by the Plaintiff[3] on July 8, 2016,

to Melissa Morris between the hours of 1:01 p.m. and 9:48 p.m.  In the first call, the

Plaintiff stated: "Dealing with these people doing unnecessary stuff patting [expletive]

down all rough and grabbing on your privates and shit like that." The Plaintiff also stated

that: "They're just out of control here" and "They're just doing whatever they feel they

---

[2] Prison Rape Elimination Act.

[3] The record does not indicate how Roper determined that the Plaintiff made the PREA report,
but it is clear from the complaint, that the Plaintiff did, in fact, make the call.

can do." ECF No. 69-1 at 5. The final three phone calls were approximately 15 minutes each and consisted of a graphic sexual nature. Id.[4]

In addition to monitoring the four phone calls, Roper also interviewed the Plaintiff on July 13, 2016, as well as Inmates Ronald Brown, Inmate Justin Peters, Inmate Johnathan Jarrells, and Inmate Daniel Wisemann, all of whom had been present during the incident which led to the Plaintiff's PREA complaint. Finally, Roper interviewed Adam Miller ("Miller").

On July 25, 2016, Roper filed his Report which noted that the allegation under investigation was that Miller sexually assaulted the Plaintiff in violation of PREA by grabbing his genitals during a pat search. The Report concluded that the allegation was unsubstantiated, and the investigation was complete. ECF No. 69-1 at 10-11.

In addition to conducting the investigation, Roper also filed an Incident Report which indicated that the Plaintiff appeared to be masturbating during the three phone calls to Melissa Morris on July 8, 2016.[5] After finding that the security video was inconclusive, the Hearing Officer found that there was no evidence to confirm the charge, and the Plaintiff was found not guilty. ECF No. 69-3 at 2.

On July 28, 2016, the West Virginia Fusion Center received a call on the PREA line from the Plaintiff that alleged Miller sexually assaulted him again while performing a pat down on about July 19, 2016. On August 1, 2016, Roper was advised via email of the complaint made by the Plaintiff. Shortly thereafter, Roper was informed that an Inmate Grievance form had been received by the Plaintiff on July 21, 2016 alleging that

---

[4] Roper  prepared handwritten notes of the contents of each of the four calls. See ECF No. 69-1 at 15, 17-18, 20-21, 23-24.

[5] A copy of the Incident Report does not appear to be contained in the record.

he had been sexually assaulted by Miller. During the investigation, Roper interviewed

the Plaintiff who stated that on either Monday July 18, 2016 or Tuesday July 19, 2016,

he was escorted to medical by Miller. The Plaintiff stated that Miller grabbed and

touched his private area again while being patted down. Roper also interviewed Miller

and reviewed the video security footage of the A Pod camera 6 for Tuesday July 19,

2016 at approximately 7:50 am.  Based on his investigation, Roper determined that the

Plaintiff's allegation was unsubstantiated. ECF No. 69-5 at 11.[6]

### III. The Pleadings

### A. The Amended Complaint

The Plaintiff alleges three broad claims in his Amended Complaint. First, he

alleges that his right to Equal Protection under the Fourteenth Amendment was violated

when state correctional officials failed and/or refused to protect him from sexual assault,

intrusion, humiliation, harassment and cruel and unusual punishment. Second, he

alleges a violation of his First Amendment right to free speech through assorted acts of

retaliation for making a PREA report. Finally, the Plaintiff alleges this his Eighth

Amendment rights were violated, and he was subjected to cruel and unusual

punishment for exercising his First Amendment right of free speech for making a PREA

---

[6] The records provided by the Defendants establish that the Plaintiff made at least three
additional PREA allegations. The first involved an incident at he Salem Correctional Center on
February 2, 2017 and involved an allegation that Corporal Kathy McKinney had made sexual
comments to the Plaintiff. ECF No. 69-8 at 3-4. Following an investigation, the allegation of
sexual harassment was deemed unfounded. Id. at 5. The second involved an incident at Salem
Correctional Center on May 7, 2017 and alleged that CO Dakota Carroll told him to "suck his
d**k and that he could make him." Id. at 25. Following an investigation, the allegation was
determined to be unfounded. Id. at 22.  Finally, on May 16, 2017, the Plaintiff alleged that Sgt.
Troy Stephon made an inappropriate sexual comment to the Plaintiff again at the Salem
Correctional Center. Id. at 650. After an investigation, this complaint was also found to be
unfounded. Id. at 48.

report. For relief, the Plaintiff asks for a trial by jury, the imposition of sanctions, loss of employment of the Defendants, and monetary damages.

**B. The Defendants' Motions to Dismiss or for Summary Judgment**

**1. Defendants Mary Knotts, A.W.P of Martinsburg Correctional Center and P.R.E.A. Compliance Manager; Hearing Officer Dodson; Lucas Roper, Investigator; and Adam Miller, C.O.**

In their memorandum, these Defendants maintain that the Plaintiff fails to state a claim upon which relief may be granted for violations of the Equal Protection Clause of the Fourteenth Amendment because his complaint provides no facts suggesting that he received disparate treatment in the handling of his grievances and administrative disciplinary matters. In addition, these Defendants argue that because the Plaintiff's Amended Complaint alleges no facts that establish a causal connection between his filing of grievances and any adverse action taken against him, he also fails to state a claim for relief under the First Amendment. Finally, because they maintain that none of the conduct alleged by the Plaintiff meets the standard of cruel and unusual punishment, the Plaintiff has failed to state a claim for relief under the Eighth Amendment.

**2. Defendant Amanda McGrew, Central Office P.R.E.A. Coordinator**

In her memorandum, Defendant McGrew makes the same arguments as those noted above. Moreover, she argues that the Plaintiff alleges no facts indicating that she took any action against him. Rather, he has simply included her name in a list of Defendants.

**3. Defendant Scott Paugh, Superintendent of Martinsburg Correctional Center**

In his memorandum, Defendant Paugh, like Defendant McGrew, makes the same arguments as those asserted by the first set of defendants. Like Defendant McGrew, he alleges that the Plaintiff alleges no facts indicating that he took any action against him and had simply included him in a list of Defendants.

## C. <u>The Plaintiff's Response</u>

In his response, the Plaintiff state that it is "obvious from the results of Ms. McGrue's and Ms. Knott's PREA Investigations that his claims [regarding Miller's pat searching] have merit and should have been forwarded to an independent PREA investigator.' ECF No. 76 at 1-2. The Plaintiff than argues that Ms. Knotts was not able to be neutral because he is an inmate and the accused was Ms. Knotts' co-worker. The Plaintiff then alleges that "the escorting officers abused and degraded a Mentally Ill Inmate, to belittle him in a time of very critical crisis, that could have turned fatal, placing the Plaintiff in danger, which also violate the A.D.A. <u>Id.</u> at 2. The Plaintiff continues by arguing that because of the ongoing issues between him and Miller, there should have been a Post Order that required Miller to work in a section that kept them separated. The Plaintiff maintains that, instead, Miller was assigned to an area where he jumped at the chance to encounter him so that he could harass him.

The Plaintiff continues by alleging that evidence would show that Ms. Knotts is willing to lie to her supervisor concerning a PREA complaint and investigation to cover for her co-workers, including Roper. He then maintains that Knotts failed in her job as PREA Compliance Manager because he was mandated to be separated from Miller, yet Miller was permitted to be in immediate contact with him.

The Plaintiff also alleges that that there was a fatal error in the investigation that renders it and its findings void. Specifically, the Plaintiff notes that the investigation and check list was initiated by Lt. Gary Hite. However, Lt. Hite was also listed as a potential witness, causing what the Plaintiff alleges is a critical conflict of interest. Specifically, the Plaintiff contends that as  a potential witness, Lt. Hite could not legally and/or morally investigate the incident. Finally, the Plaintiff alleges that all statements and facts support the Plaintiff's claim that he was sexually harassed by Miller not once but on two separate occasions.

## D. The Defendants' Reply[7]

In reply, the Defendants note that the Plaintiff claims, without providing any supporting facts, that Defendants Knotts, Roper and Miller could not objectively decide his PREA claims. They note he also baldly assets that Defendants Roper and Knotts "naturally favored [ ]" Defendant Miller "because the Plaintiff is an inmate and Black." ECF No. 76 at 3. He also alleges generally, while offering no fact, that the officers abused and degraded him in violation of the Americans with Disabilities Act. The Defendants argues that these allegations, which appear for he first time in the Plaintiff's response are wholly unsupported by facts and do not establish evidence which supports his claim that his rights were violated under the First, Eighth and Fourteenth Amendments.

In  response to the Plaintiff's argument that Miller should have been but was not separated from him after the PREA complaint, the Defendants assert that this argument is not relevant to his constitutional claims and is inaccurate.   The Defendants note that

---

[7] Although submitted on behalf of Amanda McGrew, counsel notes that the arguments apply equally to the pending dispositive motions filed by co-defendants Scott Paugh, May Knotts, Roger Dodson, Lucas Roper and Adam Miller. ECF No. 78 at 1.

evidence in the record, shows that Miller was separated from the Plaintiff after his initial PREA complaint was made  until the investigation was completed and was again separated from the Plaintiff after his allegation concerning the second PREA violation.

In reply to the Plaintiff's allegations that Lt. Hite was listed both as a witness and investigated the matter, the Defendants maintain that he did not investigate. Rather, he merely received the Plaintiff's grievance and completed a procedural checklist regarding the grievance, while Roper handled the investigation of the matter. Furthermore, to the extent that Lt. Hite placed a check mark in the boxes next to both "if perpetrator is an inmate"…and "if the perpetrator is a staff person," such minor paperwork error does not show a violation of the Plaintiff's rights under the First, Eighth or Fourteenth Amendments to the Constitution.

The Reply also notes that even after filing his Response, the Plaintiff alleges no facts that suggest that he was treated differently than another inmate because of discrimination. The Reply continues that the Plaintiff does not allege any facts that suggest his inclusion in a protected class was the basis for any action taken against him or any conduct of the Defendants. Additionally, the Defendants argue that even after filing his Response, the Plaintiff has alleged no fact which suggests a causal connection between his exercise of his First Amendment right in filing a grievance and an adverse action taken against him by the pursuit of an unrelated, but substantiated administrative violation. Finally, the Defendants argue that even after filing his Response, the Plaintiff has alleged no facts that any action was taken against him that subjected him to cruel and unusual punishment.

## IV. Legal Standard

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a Plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the Plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, for a complaint to survive dismissal for failure to state a claim, the Plaintiff must "allege facts sufficient to

10

state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co</u>., 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v. Microsoft Corp</u>., 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. (Id)**.**

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its

burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## V. **Analysis**

### A. State of West Virginia and W.Va. Dept. of Military Affairs and Public Safety

In his Amended Complaint, the Plaintiff named both the State of West Virginia and the West Virginia Department of Corrections and Military Affairs[8]. The Order to Answer noted that neither of these were subject to suit under § 1983, and accordingly, summonses were not issued for either entity.

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

---

[8]Included within this Department is the West Virginia Division of Corrections and Rehabilitations which oversees the state's adult and juvenile offender population. https://dmaps.wv.gov/Pages/default.aspx

> violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, to state a claim under 42 U.S.C. § 1983, the Plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws.  Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

Neither the State of West Virginia, nor the West Virginia Department of Military Affairs and Public Safety is a proper defendant because neither is a person subject to suit under 42 U.S.C. § 1983.  See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (Neither a state nor its officials acting in their official capacities are "persons" under 42 U.S.C. 1983).  This rule applies "to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." Id. at 70.

## B. West Virginia Division of Corrections Commissioner

When the Plaintiff filed his complaint, he did not identify the Commissioner by name. On September 11, 2018, the Plaintiff notified the Court that at the time of the incident giving rise to his complaint, the Commissioner was Jim Rubenstein ("Rubenstein"). Rubenstein retired on April 1, 2017, and the Plaintiff did not provide a service address for him. Accordingly, Rubenstein has never been served. Regardless, the Plaintiff's complaint fails to state a proper claim against Rubenstein.

Liability under § 1983 is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d. 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violated his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See  Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, the Plaintiff's complaint makes no specific allegations against Rubenstein to indicate that he was personally involved in any alleged violation of his constitutional rights. Accordingly, it appears that the Plaintiff has merely named Rubenstein in his official or supervisory capacities as Commissioner of the West Virginia Division of Corrections. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham,  473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacity should be treated as suits against the state. Id. at 166. For the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 568, 694 (1978)). In this case, the Plaintiff fails to assert that a policy or custom of the Martinsburg Correctional Center or the West Virginia Division of Corrections played a part in the alleged violation of his constitutional rights. Therefore, Rubenstein is due to be dismissed.

**C. Cruel and Unusual  Punishment**

14

The Eighth Amendment provides, in relevant part, that "cruel and unusual punishments [shall not be] inflicted." U. S. Const. Amend. VII. The Supreme Court has construed this clause to require prison officials to "provide humane conditions of confinement." Farmer v. Brennen, 511 U.S. 825, 832 (1994). Therefore, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In Brewer v. Paugh, 2008 WL 4500393 (N.D.W. Va. 2008) (Stamp, J.), this Court declared that "[b]ecause jail officials are given deference in determining what measures are necessary to maintain discipline and security, '[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny.'"  Id. at 3 (quoting Whitley v. Albers, 475 U.S. 312 319 (1986)). Only those actions that cause "the unnecessary and wanton infliction of pain" constitute cruel and unusual punishment prohibited by the Eighth Amendment. Id. (citing Ingraham v. Wright, 430 U.S. 651, 670 (1977)). In Johnson v. Quinones, 145 F.3d. 164 (4th Cir. 1998), the Fourth Circuit held that, "[t]o succeed on an Eighth Amendment 'cruel and unusual punishment' claim, a prisoner must prove two elements: (1) that objectively the **deprivation of a basic human need** was '**sufficiently serious**,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Quinones at 167 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)) (emphasis added). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In his Amended Complaint, the Plaintiff makes various allegations which he contends establishes that he was subjected to cruel and unusual punishment. First, he alleges that Correctional Officer Morris, who is not a named as a defendant, and Lt. Shoemaker ("Shoemaker")  "wrote him up" in retaliation for requesting a grievance form and thereby inflicted cruel and unusual punishment upon him for exercising his First Amendment right of freedom of speech. In addition, as the result of being found guilty of the charges levied by Morris and Shoemaker, the Plaintiff alleges he was again subjected to cruel and unusual punishment for exercising his First Amendment right of freedom of speech by requesting and filing grievances as required by the Prison Litigation Reform Act. The Plaintiff maintains this caused him undue emotional distress. Third, he alleges that Roper made false accusations against him by filing an Incident Report that alleged he was masturbating while on the phone. The Plaintiff maintains that this false report inflicted cruel and unusual punishment, which caused him undue emotional distress, and was done in retaliation for his filing a PREA report. Fourth, the Plaintiff alleges that on July 12, 2016,  Mary Knotts ("Knotts), the associate warden of the MCC, called his friend, Melissa Morris, and reported that there was an investigation being conducted against him for masturbating while on the phone with another female. The Plaintiff alleges that was done in a malicious and intentional manner to cause an irreparable injury to his relationship with Ms. Morris, and as such, inflicted cruel and unusual punishment on him. Additionally, the Plaintiff alleges that after being placed under investigation for a PREA complaint. Miller began to relentlessly harass and subject him to further intentional sexual intrusions, assaults, mental anguish and cruel and unusual punishment. As a corollary, the Plaintiff alleges that he was afforded no

protection from Miller, and therefore, both Knotts and McGrew violated his right to be free from cruel and unusual punishment causing him undue emotional distress. None of the Plaintiff's allegations give rise to any assertion that he was deprived of any basic needs or was subjected to acts that violated contemporary standards of decency.

Furthermore, to the extent the Plaintiff is attempting to allege that he was the victim of excessive force as the result of Miller's pat downs, the same fails to state a claim. Admittedly, a "single incident of sexual abuse, may violate an inmate's Eighth Amendment rights . . . if it is entirely gratuitous and devoid of penological purpose." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015). As the Court in Crawford went on to explain: "[to] show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia." Id. at 257. Rather, the Court held that "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." Id. at 254. In the instant case, the Plaintiff makes no such claims, and the record before the court, including the video of the second pat down, establish that any contact with the Plaintiff's genitalia was incidental and occurred during a search that was part of a legitimate penological purpose.

**D. Equal Protection**

The Fourteenth Amendment to the United States Constitution provides, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." To be successful on an equal protection claim, a plaintiff must demonstrate "that he has

17

been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

With respect to his claim under the Fourteenth Amendment, the Plaintiff simply names the Defendants and then states they "did cause the clear violations of the Petitioner's [sic] rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution. ECF No. 24-1 at 5.However, nowhere in his Amended Complaint does the Plaintiff set forth any facts that suggest that his inclusion in a protected class was the basis for any action taken against him or any conduct exhibited by the Defendants.

In his Response to the Defendants' Motions to Dismiss or for Summary Judgment, the Plaintiff makes a bald assertion that Defendants Roper and Knotts "naturally favor[ ]" Defendant Miller "because the Plaintiff is an inmate and Black." ECF No. 76 at 3. He  also alleges generally, without offering any facts in support, that officers abused and degraded him ("a mentally ill inmate") in violation of the Americans with Disabilities Act. Id. However, these allegations are without any support in the Amended Complaint or the exhibits attached thereto. Accordingly, the Plaintiff has failed  to state a viable Fourteenth Amendment claim.

**E. Retaliation**

A state official may not retaliate against an individual for the exercise of a constitutional right. ACLU v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1983). To state

a color state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017, cert. denied, 138 S.Ct. 738 (2018). When an  inmate files a grievance under the prison's established grievance procedure, he is exercising his First Amendment right to petition. Booker v. South Carolina Department of Corrections, 855 F.3d 533, 541 (4th Cir. 2017)  "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin, 858 F.3d at 249. Moreover, the "plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." Id. at 250. Finally, the plaintiff must plead sufficient  facts to show that the allegedly retaliatory act "was taken in response to the exercise of a constitutionally protected right.' Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see, e.g., Martin, 858 F.3d at 250 (deciding that defendant's official's placement of plaintiff in administrative segregation after questioning him about the grievance he had filed the previous day was enough to meet causation element of First Amendment retaliation claim).

The Plaintiff alleges various "retaliatory" action taken by the Defendants as the result of his filing grievances. Generally, he alleges that they threatened him, physically harmed him, transferred him to numerous correctional facilities to cause frustration in his seeking federal relief, and interfered with his grievances and PREA complaint about

sexual harassment and intimidation by correctional staff. ECF No. 24-1 at 6. However, the Plaintiff provides no specific and detailed factual allegations regarding any retaliatory actions, and he fails to suggest which Defendants may have taken adverse actions against him. Because the Plaintiff's allegations under his retaliation claim are stated in a wholly conclusory fashion, he has failed to  establish the requisite causal connection.

The undersigned recognizes that the Plaintiff is proceeding *pro se* and as such his complaint must be liberally construed. Applying a liberal reading to the Amended Complaint, it appears that in his allegations regarding cruel and unusual punishment, the Plaintiff alludes to two specific incidents which he alleges were taken in retaliation for his filing grievances.

First, as previously noted, he alleges that Correctional Officer Morris and Lt. Shoemaker "wrote him up" in retaliation for filing grievances  and for filing a false accusation in a grievance and Dodson found him guilty of disciplinary charges for those charges. Second, he alleges that Roper fraudulently, maliciously and intentionally made a false accusation against him that he observed him on video masturbating while on the phone. Other than his  bald assertion of these "retaliatory" actions, the Plaintiff fails to provide any facts to support his subjective belief that these actions were taken in retaliation for filing grievances or his first PREA complaint.

With respect to the actions of Morris, Shoemaker and Dodson, the record establishes that the Plaintiff did receive an incident report for (1) Obstructing and (2) Falsification of Information/Testimony. Neither charge related to filing grievances, per se. Rather, it was for requesting excessive grievance forms on July 4, 2016, thereby

interfering with staff's ability to complete their daily tasks in a timely fashion  and for making a false charge in a grievance that Sgt. King threatened him. The Plaintiff had a disciplinary hearing and was found guilty of the charges. In addition, Roper did, in  fact, file an incident report against the Plaintiff which  alleged that Plaintiff masturbated while on the phone with a female. However, nothing in the record even hints to the possibility that this report was made because the Plaintiff filed grievances or a PREA allegation. Rather,  it resulted from Roper's investigation into the Plaintiff's first PREA report, which included reviewing the Plaintiff's phone calls on July 8, 2016, and watching the video of the Plaintiff while making  those calls.

In summary, the Plaintiff has not established that there was a causal relationship between his filing grievances or a PREA allegation and any conduct attributed to  the Defendants. Additionally, the Plaintiff has not established the Defendants took any action that adversely affected his First Amendment right to file grievances or a PREA report.  In fact, the Plaintiff continued to file grievances after both incident reports. ECF Nos. 24-2 at 8, 9, 12, 16. In addition, he filed a second PREA complaint on July 28, 2016.

## VI. Recommendation

For  the  reasons  set  forth  above,  the  undersigned  recommends  that  the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment  [ECF Nos. 53, 68, 74] be **GRANTED**; and this case be **DISMISSED with prejudice for failure to state a claim upon which relief can be granted.**

The parties shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written**

**objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: July 23, 2019

*/s, James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE